UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

  Plaintiff,

v.               Case No. 05-CR-178

ROBERT DONOVAN,

  Defendant.

---

**DECISION AND ORDER ON THE PARTIES' PRE-TRIAL MOTIONS**

---

  On July 13, 2005, a federal grand jury sitting in the Eastern District of Wisconsin returned a one-count indictment naming Robert Donovan ("Donovan") as the defendant. The indictment alleges, inter alia, as follows:

  1. Between on or about August 2, 2001, and on or about August 8, 2002, in the State and Eastern District of Wisconsin,

        ROBERT DONOVAN,

with intent to defraud, did cause a materially false statement to be made to the United States Department of Housing and Urban Development (HUD).

  2. The statement was made by City of Milwaukee officials in connection with a $200,000 block grant funded by HUD and approved for The Milwaukee Alliance, Inc.

  3. The statement indicated that Donovan had no financial interest in The Milwaukee Alliance, Inc., when in fact, between on or about October 15, 2001, and on or about February 28, 2002, Kathleen Donovan, the wife of Robert Donovan, received $2,700 from The Milwaukee Alliance for joint use with Robert Donovan.

  4. During the time period relative to this indictment, Robert Donovan was an alderman for the City of Milwaukee.

. . . .

25. On or about July 25, 2002, in the State and Eastern District of Wisconsin, and elsewhere, Robert Donovan did cause a materially false statement to be made by Milwaukee city officials to HUD. The statement, in the form of an email, listed Donovan's financial connections to Milwaukee Alliance. The statement was false in that it did not disclose the financial interest associated with the Milwaukee Alliance checks to Kathleen Donovan.

All in violation of Title 18, United States Code, sections 2 and 1012.

(Indictment ¶¶ 1- 4, 25.) On August 25, 2005, Donovan was arraigned and entered a plea of not guilty. A final pretrial is scheduled to be conducted on November 28, 2005, and a jury trial is scheduled to be conducted, commencing December 5, 2005.

In accordance with the pretrial motion schedule, Donovan has filed three pretrial motions: (1) a motion to dismiss the indictment, (2) a motion for a bill of particulars, and (3) a motion to strike surplusage. The government has also filed a pretrial motion (although under seal), to wit, a motion, under 26 U.S.C. § 6103(i)(4), to permit the introduction at trial of personal tax return information of Donovan and his wife. The parties' respective motions are now fully briefed and are ready for resolution. For the reasons which follow, the defendant's motion to dismiss, motion for bill of particulars, and motion to strike surplusage will be denied; furthermore, the government's motion to permit the introduction at trial of personal tax return information of Donovan and his wife will be deferred until trial.

## I. THE DEFENDANT'S MOTIONS

**A. Motion to Dismiss the Indictment**

"The indictment . . . must be a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). In assessing the sufficiency of an

indictment, it is useful to bear in mind the rights that the document serves to protect in our constitutional system. The Fifth Amendment provides for indictment by a grand jury and protects individuals from being twice prosecuted for the same offense, while the Sixth Amendment guarantees an individual's right to be informed of the charges against him. Because it is a means of safeguarding these constitutional guarantees, an indictment must satisfy three requirements in order to be legally sufficient. *See United States v. Anderson*, 280 F.3d 1121, 1124 (7th Cir. 2002). "First, the indictment must state all of the elements of the crime charged; second, it must adequately apprise the defendant of the nature of the charges so that he may prepare a defense; and third, it must allow the defendant to plead the judgment as a bar to any future prosecutions for the same offense." *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000).

In assessing the sufficiency of an indictment courts are to review the document in its entirety, giving it a practical, rather than hypertechnical, reading. *Id.*

> In setting forth the offense, it is generally acceptable for the indictment to "track" the words of the statute itself, so long as those words expressly set forth all the elements necessary to constitute the offense intended to be punished. *United States v. Hinkle*, 637 F.2d 1154, 1157 (7th Cir.1981). However, an indictment that tracks the statutory language can nonetheless be considered deficient if it does not provide enough factual particulars to "sufficiently apprise the defendant of what he must be prepared to meet." *Russell v. United States*, 369 U.S. 749, 763, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). In order for an indictment to satisfy this second hurdle, we require, at a minimum, that it provide some means of pinning down the specific conduct at issue. *United States v. Josten*, 704 F.Supp. 841, 844 (N.D.Ill.1989). Yet in this inquiry, the presence or absence of any particular fact need not be dispositive of the issue.

*Id.*

"Facial sufficiency is not a high hurdle. Indictments need not exhaustively describe the facts surrounding a crime's commission nor provide lengthy explanations of the elements of the offense." *United States v. Bates*, 96 F.3d 964, 970 (7th Cir. 1996).

3

Donovan's motion to dismiss the indictment is predicated on three grounds. First, Donovan argues that, while the indictment alleges that Donovan caused City of Milwaukee officials to fail to disclose to HUD certain information regarding his wife's prior employment with The Milwaukee Alliance, the indictment fails to allege that either Donovan or the city had a duty to disclose such information. Donovan argues that, "[b]ecause a duty to disclose is an essential element of a fraud charge based on nondisclosure, the indictment fails to state an offense." (Def.'s Mot. ¶ 1.)

Second, Donovan argues that the indictment fails to allege any facts to support the essential element of materiality because there is no allegation that, if HUD had learned that his wife had worked for the Milwaukee Alliance, it would or could have had an influence on HUD's decision making. (Def.'s Mot. ¶ 2.)

Third, Donovan argues that

> [t]he facts included in the indictment establish that the alleged false statement was in fact true. That is, on July 25, 2002, when the city official sent an e-mail to HUD indicating that Donovan "had no financial interest in the Milwaukee Alliance," facts set forth in the indictment establish that Donovan, in fact and in law, had no financial interest in the Milwaukee Alliance. Therefore, the indictment fails to state an offense under 18 U.S.C. § 1012.

(Def.'s Mot. ¶ 3.)

**1. Failure of the Indictment to Allege Duty to Disclose Information**

Donovan argues that the indictment is fatally flawed for failing to allege that Donovan had a duty to disclose "the alleged missing information concerning his wife's employment at the Milwaukee Alliance." (Def.'s Mem. at 8.) Quoting *Chiarella v. United States*, 445 U.S. 222, 235 (1980), Donovan argues that "when an allegation of fraud is based on nondisclosure, there can be no fraud absent a duty to speak." (Def.'s Mem. at 8.) Furthermore, according to Donovan, because he

4

is "charged with causing a city official to fail to disclose information, an even more stringent standard is imposed: it must be shown that the defendant had specific knowledge of the other person's duty to report and that the defendant acted with specific intent to frustrate that person's duty." (Def.'s Mem. at 8.)

Donovan is charged with a violation of 18 U.S.C. § 1012. That statute, in pertinent part, provides as follows:

> Whoever, with intent to defraud, makes any false statement in any book of the Department of Housing and Urban Development or makes any false report or statement to or for such Department . . . shall be fined under this title or imprisoned not more that one year or both.

Drawing from the statutory language of section 1012 and from the Seventh Circuit jury instructions for statutory sections not dissimilar to section 1012 (i.e., 18 U.S.C. §§ 1001, 1006, and 1014), the government must prove the following elements of the charged offense: (1) that Donovan made or caused to be made a false statement; (2) that the statement was made to or for HUD; (3) that the statement was material; and (4) that Donovan acted with intent to defraud.

Donovan's argument for dismissal of the indictment is predicated on the proposition that he cannot be convicted of a violation of section 1012 for failing to disclose that which he had no duty to disclose. And the cases upon which he relies in advancing such argument seem to support such proposition. *See, e.g., United States v. Irwin*, 654 F.2d 671, 678 (10th Cir. 1981).

However, Donovan is not charged with merely failing to disclose information. Instead, he is charged with affirmatively causing a false statement to be made to HUD by City of Milwaukee officials. Specifically, the indictment charges that on or about July 25, 2002, Donovan caused a statement to be made to HUD, which statement indicated the financial connections that Donovan had

5

to Milwaukee Alliance, Inc., but such statement did not include the fact that between on or about October 15, 2001, and on or about February 28, 2002, Donovan's wife had received $2,700 from the Milwaukee Alliance for joint use with Donovan. In other words, the indictment alleges that Donovan did have a financial connection to Milwaukee Alliance, Inc., in addition to those financial interests which he affirmatively revealed to City officials and, through them, to HUD. Such being the case, it is alleged that Donovan's failure to include the above-identified "financial interest" in the statement in which he listed his financial connections to Milwaukee Alliance rendered such statement false.

If the government were alleging that Donovan made no statements at all, then the indictment would have to include an allegation that he had a duty to disclose. However, the allegation that Donovan made an affirmative statement regarding his financial interests in Milwaukee Alliance, Inc., but failed to include a financial interest, is different. In an analogous situation one court has characterized the difference as follows: "while there is an option of silence, once a defendant volunteers information, he has an obligation to refrain from telling half-truths or from excluding information necessary to make the statements accurate." *United States v. Cisneros*, 26 F.Supp.2d 24, 42 (D.D.C.1998).

In light of the foregoing, to the extent that Donovan's motion to dismiss is predicated on the indictment's failure to allege a duty to disclose "the alleged missing information concerning his wife's employment at the Milwaukee Alliance" (Def.'s Mem. at 8.), Donovan's motion to dismiss will be denied.

6

**2. Failure of the Indictment to Allege Facts to Support Element of Materiality**

The Supreme Court has made clear that a misrepresentation or concealment "is material if it has 'a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed.'" *Neder v. United States,* 527 U.S. 1, 16 (1999) (quoting *United States v. Gaudin,* 515 U.S. 506, 509 (1995)).

The indictment in the present case alleges that the defendant "did cause a materially false statement to be made to the United States Department of Housing and Urban Development (HUD)." (Indictment ¶ 1.) Elsewhere the indictment again alleges that the defendant "did cause a materially false statement to be made by Milwaukee city officials to HUD." (Indictment ¶ 25.) Thus, at a minimum the indictment sets forth the materiality element.[1] The defendant nonetheless argues that "there is no information provided that would indicate that knowledge of Ms. Donovan's prior employment with the Milwaukee Alliance could have influenced HUD in assessing the City of Milwaukee Block Grant at issue." (Def.'s Mem. at 17.)

There is no requirement that the indictment set forth the information sought by Donovan. Simply stated, that the indictment sets forth generally the element of materiality renders the indictment sufficient. *See United States v. Rock*, 424 F.2d 403, 405 (7th Cir. 1970). Of course, whether the government will be able to convince the jury that Donovan's alleged false statement was, in fact, material, i.e., that it had "a natural tendency to influence, or [was] capable of influencing, the

---

[1] As the government points out in its brief, § 1012 does not in its express provisions include the element of materiality. Nevertheless, the indictment includes the allegation that Donovan's alleged false statement was material and the government has stated that it has "erred on the side of caution by alleging materiality." (Gov't's Resp. at 11.) Consequently, the government will have to prove to the jury that it was so.

7

decision of the decisionmaking body to which it was addressed," *Neder,* 527 U.S. at 16, remains to be seen. A trial will be necessary in order to answer that question.

Consequently, to the extent that Donovan's motion to dismiss is predicated on the indictment's failure to allege sufficient facts to support the element of materiality, Donovan's motion to dismiss will be denied.

**3. The Alleged False Statement Was Literally True**

Donovan argues that, according to the very words of the indictment, the false statement which he is alleged to have caused to be made to HUD was literally true and therefore the indictment fails to state an offense and should be dismissed. Specifically, Donovan argues that

> [a]lthough according to the indictment [Kathleen Donovan] had been paid five months earlier, on July 25, 2002, neither Kathleen nor Robert Donovan had a real possibility of gain or loss from, had no legal or equitable interest in, and was not an active participant in the affairs of the Milwaukee Alliance. In fact, on July 25, 2002, in the very language of the indictment itself, Donovan "had no financial interest" and "no financial connections" to the Milwaukee Alliance.
>
> Because the indictment itself proves that statement in the July 25, 2002 e-mail was in fact and law true, it fails to state an offense under 18 U.S.C. § 1012, and must be dismissed.

(Def.'s Mem. at 22.)

The particular language of the indictment upon which Donovan rests his argument is found at paragraph 25 of the indictment and reads as follows:

> On or about July 25, 2002, in the State and Eastern District of Wisconsin, and elsewhere, Robert Donovan did cause a materially false statement to be made by Milwaukee city officials to HUD. The statement, in the form of an email, listed Donovan's financial connections to Milwaukee Alliance. The statement was false in that it did not disclose the financial interest associated with the Milwaukee Alliance checks to Kathleen Donovan.

(Indictment ¶ 25.)

In response the government argues that, when viewed as a whole, the factual scenario presented by the language of the indictment is one that demonstrates the statements set forth in Donovan's July 25, 2002 email to not be literally true. Specifically, the government argues as follows:

> [A]ccording to the Indictment, Donovan, having decided to apply for a HUD grant, failed to provide required information; and, second, in the context of his communications with the City, he created the scenario in which his disclosures intentionally became false and misleading. Donovan voted for a HUD block grant for an organization that he had founded. When the conflict issue was raised, Donovan sought to satisfy the concerns through the presentment of affirmative statements regarding his financial connections. Those statements were false.

(Gov't's Resp. at 13.)

Whether the statement allegedly caused by Donovan to be made by city officials to HUD on July 25, 2002 was true or not true and, if not true, whether is it was material and made with the intent to defraud, are questions for the jury to decide. Indeed, the indictment alleges that, after Donovan voted in favor of approving a $200,000 grant to Milwaukee Alliance and an issue was raised concerning Donovan's potential conflict of interest under HUD requirements and regulations,

> Donovan and others on his behalf indicated to City officials that Donovan's financial interest in Milwaukee Alliance as:
>
> a. Donovan had served as chairman and president of Milwaukee Alliance, but had not been paid for that work;
>
> b. Donovan had stepped down from those positions and was serving only in an advisory capacity; and
>
> c. Donovan's adult step-daughter had worked for Milwaukee Alliance between February 2002 and June 2002.

(Indictment ¶ 11.) In other words, the indictment alleges that, by indicating that his financial interest in Milwaukee Alliance consisted of the above-identified matters (all of which, like the payment of

9

$2,700, were prior to July 25, 2002), and not including in that list the fact that his wife had received nine separate $300 checks from Milwaukee Alliance during the time period between on or about October 15, 2001, and on or about February 28, 2002, Donovan caused a false statement to be submitted to HUD.

To be sure, citing various sources for the definition of "financial interest," Donovan argues that "[o]n July 25, 2002, the prior payments to Mrs. Donovan did not give her a right, claim or legal share in anything belonging to the Milwaukee Alliance, nor was she thereby joined or in union with the Alliance." (Def.'s Mem. at 21.) But, the same could be said for the work that Donovan's step-daughter had performed for Milwaukee Alliance and for which she had been paid. Yet, Donovan is alleged to have told City officials (and through them, HUD) about that matter, at least arguably because he viewed it as a "financial interest" which he had in Milwaukee Alliance.

To reiterate, it is for the jury to decide whether Donovan's alleged failure to include his wife's receipt of $2,700 from Milwaukee Alliance in his statement to City officials regarding his "financial interest" in, or "financial connections" to, Milwaukee Alliance resulted in his making, with intent to defraud, a material false statement to HUD. It is enough to say at this point in the proceedings, however, that, when viewed as a whole, the indictment does not demonstrate that Donovan's July 25, 2002 statement was literally true. Consequently, to the extent that Donovan's motion to dismiss is predicated on the assertion that the false statement which he is alleged to have caused to be made to HUD was literally true and therefore the indictment fails to state an offense, Donovan's motion to dismiss will be denied.

**B. Motion for Bill of Particulars**

Donovan moves the court for a bill of particulars. Specifically, he seeks an order requiring the government to provide him with the following information.

1. The specific acts and conduct by which Donovan caused the alleged false statement to be made.

2. The specific provisions of law and/or regulation that imposed a duty upon the city of Milwaukee to disclose information concerning Kathleen Donovan's employment at the Milwaukee Alliance as well as the alleged undisclosed financial connections.

3. The specific law, regulation, inquiry and/or other set of circumstances that imposed a duty on Donovan to disclose Kathleen Donovan's employment at the Milwaukee Alliance as well as the alleged "other undisclosed financial connections."

4. The specific law, regulation and/or agency policy that would indicate that knowledge of Kathleen Donovan's employment at the Milwaukee Alliance would or could have had any influence on HUD's decision making.

(Def.'s Mot. at 1-2.)

Rule 7(f) of the Federal Rules of Criminal Procedure allows, in conjunction with the issuance of an indictment, for the filing of a bill of particulars. *United States v. Canino*, 949 F.2d 928, 949 (7th Cir. 1991); Fed. R. Crim. P. 7(f). A bill of particulars more precisely describes the illegal activities in which the defendant allegedly engaged, *Canino*, 949 F.2d at 949, and provides the defendant with information sufficient to prepare an adequate defense to the charges and to protect himself against double jeopardy. *United States v. Glecier*, 923 F.2d 496, 502 (7th Cir. 1991).

In determining whether a bill of particulars is required, the court should consider the following factors: (1) whether the indictment states all of the elements of the offense charged; (2) whether the indictment informs the defendant of the nature of the charge so that the defendant may prepare a defense; and (3) whether the defendant may plead the judgment as the bar to any later

11

prosecution for the same offense. *United States v. Serola*, 767 F.2d 364, 369 (7th Cir. 1985). "An indictment satisfies this standard by setting forth the elements of the offense charged, the time and place of the defendant's conduct which violated that offense, and citation to the statutes allegedly violated." *United States v. Norris*, 833 F. Supp. 1392, 1401 (N.D. Ind. 1993).

However, "a defendant has no right to discover, through a bill of particulars, the evidentiary details of the government's case." *United States v. Brock*, 863 F. Supp. 851, 867 (E.D. Wis. 1994) (citing *Glecier*, 923 F.2d at 501-02). Nor is a bill of particulars intended to be used to reveal the theory of the government's case. *Glecier*, 923 F.2d at 502; *United States v. Lavin*, 504 F. Supp. 1356, 1361 (N.D. Ill. 1981). Indeed, "a bill of particulars is not required when information necessary for a defendant's defense can be obtained through 'some other satisfactory form.'" *Canino*, 949 F.2d at 949 (quoting Wright, *Federal Practice and Procedure: Crim.2d* § 129, pp. 436-438 (1982)). For example, "the 'open-file' policy is an adequate 'satisfactory form' of information retrieval, making the bill of particulars unnecessary." *Id.*

The indictment in this case states all of the elements of the offense charged; it informs Donovan of the nature of the charge so that he might prepare a defense; and, the language of the indictment is sufficient for Donovan to plead any judgment entered as a bar to any later prosecution for the same offense. Moreover, the government is following its open file policy in this case. Thus, Donovan has already received (and will continue to receive) the information and materials identified in Crim. L. R. 16.1. In my opinion, the bill of particulars requested by Donovan essentially seeks the evidentiary details of the government's case and the theory of the government's case. That is not the purpose of a bill of particulars. Simply stated, the court is not persuaded that the information provided in the indictment and through the government's open file policy is insufficient to allow the

12

defendant to prepare an adequate defense. Consequently, Donovan's motion for bill of particulars will be denied.

**C. Motion to Strike Surplusage**

Donovan moves to have stricken from the indictment, as surplusage, paragraphs 16, 17, and 19 through 24. In support of his motion Donovan argues that paragraphs 16 and 17, which allege that Milwaukee Alliance records were altered to conceal the alleged undisclosed payments to Kathleen Donovan, do not allege that Donovan was involved in altering the documents or that he was aware of their having been altered. Consequently, according to Donovan, the allegations in those two paragraphs have no relevance to whether Donovan intentionally failed to disclose the payments and they are prejudicial "because they suggest that the records were altered as part of Donovan's attempt to conceal the payments." (Def.'s Mot. at 1.)

Donovan also argues that "[p]aragraphs 19 through 24 purport to identify 'other undisclosed' financial connections without alleging that Donovan had a duty to disclose them or that he failed to disclose them with the requisite intent. These allegations therefore are not relevant to the charge that Donovan fraudulently failed to disclose his wife's employment, but unfairly suggest that he was somehow at fault with respect to the other undisclosed financial connections." (Def.'s Mot at 1-2.)

In sum, Donovan argues that the allegations set forth in paragraphs 16, 17, and 19 through 24 are not relevant to the specific crime with which he has been charged. Because they are not relevant and because they are also prejudicial, they must be stricken as surplusage.

Federal Rule of Criminal Procedure 7(d) provides that "[u]pon the defendant's motion, the court may strike surplusage from the indictment." The Advisory Committee Notes to subdivision (d) explains that the "rule introduces a means of protecting the defendant against immaterial or

13

irrelevant allegations in an indictment or information, which may, however, be prejudicial." In other words, "legally relevant information is not surplusage." *United States v. Bucey*, 691 F. Supp. 1077, 1081 (N.D. Ill. 1988). Moreover, motions to strike should be granted "only if the targeted allegations are *clearly not* relevant to the charge and are inflammatory *and* prejudicial." *United States v. Andrews*, 749 F. Supp. 1517, 1518 (N. D. Ill. 1990) (quoting *United States v. Chaverra-Cardona*, 667 F. Supp. 609, 611 (N.D. Ill. 1987)).

In direct contradiction to Donovan, the government argues that the information set forth in the particular paragraphs which Donovan seeks to have stricken as surplusage is indeed relevant to Donovan's charge and therefore should not be stricken. Specifically, the government argues as follows:

> The indictment alleges that Donovan caused a false statement to be made to HUD. The primary falsity of the statement is Donovan's concealment of money paid to his wife. The indictment adds that Donovan's communications with City officials also included false representations regarding money lent to Milwaukee Alliance and regarding the work performed by Milwaukee Alliance employees. While as a technical matter, these latter allegations need not be proved to support a guilty verdict, they are not unfairly prejudicial to the defendant.
>
> First, the additional allegations are "intrinsically related" to the primary conduct. Under the "intrinsically related" doctrine, "evidence concerning the chronological unfolding of events," is admissible to show a complete story of a defendant's conduct. Of course, as a strategic matter, Donovan would like to limit the presentment of that evidence to the narrowest possible. But the evidence of his communications with the City on the entire scope of his financial connections to Milwaukee Alliance rests at the heart of the case.
>
> Second, where aspects of proof include multiple allegations of concealment, the Seventh Circuit has recommended that such conduct be included in a single count.
>
> Third, one of the essential elements of the charge is that the defendant acted "with intent to defraud." As indicated above, "intent to defraud" contemplates a course of conduct through which a defendant intends deception. . . . "[I]ntent to defraud can be proven by circumstantial evidence and by inferences drawn from the

14

scheme itself." In *Moede*, the court found "intent to defraud" through a series of deceptive conduct involving false statements on loans, the issuance of NSF checks, forged signatures, and violations of bank rules.

> The indictment against Donovan contemplates a similar course of conduct. The indictment alleges conduct over a one-year period: August 2, 2001 through August 8, 2002. Indictment at ¶ 1. The particular false statement at issue allegedly took place on a day within that time frame, Indictment at ¶ 25; but the conduct at issue hardly is limited to that single day. Granting the motion to strike would not remove prejudicial language; it would strike important pieces of necessary evidence.

(Gov't's Resp. at 14-16.) (citations omitted).

As noted previously, it is only irrelevant <u>and</u> prejudicial information in an indictment to which Fed. R. Crim. P. 7(d) is directed. And, simply stated, I am not persuaded that the information set forth in paragraphs 16, 17, and 19 through 24 is irrelevant to the particular crime with which Donovan has been charged. Such being the case, the defendant's motion to strike surplusage will be denied.

## II. THE GOVERNMENT'S MOTION

The government has filed, under seal, a motion under 26 U.S.C. § 6103(i)(4) to permit the introduction at trial of personal tax return information of Donovan and his wife. Under Title 26 U.S.C. § 6103(i)(1), the government, in an investigation of non-tax criminal offenses, may apply *ex parte* to the district court for an order permitting disclosure and use of tax information during a criminal investigation. Similarly, before any such information may be used in a judicial proceeding, such as the trial in this criminal prosecution, the United States must obtain an additional order from the presiding judge, pursuant to 26 U.S.C. § 6103(i)(4). Use of the tax information is permissible "if the court finds that such return or taxpayer return information is probative of a matter in issue relevant in establishing the commission of a crime or the guilt or liability of a party." Section

15

6103(i)(4)(A)(i). Based on the arguments presented in the government's sealed motion, it would appear that the tax returns of Donovan and his wife may be relevant to the criminal charge which Donovan is currently facing and therefore such tax returns may be admissible at trial. However, the court will reserve ruling on the admissibility of such tax returns until the issue is presented formally at trial. At that time, the court will be in a better position to rule on the question of admissibility.

### III. ORDERS

**NOW THEREFORE IT IS ORDERED** that the defendant's motion to dismiss the indictment be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the defendant's motion for bill of particulars be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the defendant's motion to strike surplusage be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that a court ruling on the government's motion under 26 U.S.C. § 6103(i)(4) to permit the introduction at trial of personal tax return information of Donovan and his wife be and hereby is deferred until trial.

**SO ORDERED** this 19th day of October 2005, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge